**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**TRIBAL SOLUTIONS GROUP, LLC AND**                      **PLAINTIFFS**
**TRIBAL COMMUNICATIONS, LLC**

**V.**                            **CIVIL ACTION NO.** 3:23-cv-10-CWR-FKB

**JOSEPH VALANDRA; CLAYTON WOOLEY;**
**JASE WILSON; MICHAEL FALOON;**
**TRIBAL READY, INC.; AND FICTITIOUS**
**DEFENDANTS A THROUGH Z**                          **DEFENDANTS**

<u>**COMPLAINT**</u>

Tribal Solutions Group, LLC ("TSG") and Tribal Communications, LLC ("TC") (collectively "Plaintiffs") file this Complaint against Defendants Joseph Valandra ("Valandra"), Clayton Wooley ("Wooley"), Jase Wilson ("Wilson"), Michael Faloon ("Faloon"), and Tribal Ready, Inc. (collectively "Defendants") as follows:

<u>**Nature of Suit**</u>

1.      Plaintiffs bring this suit after their Manager, Dan Davis ("Davis"), discovered a brazen conspiracy involving TC's trusted Senior Vice President Valandra and trusted network design independent contractor Wooley. While purporting to be developing business for TC, Valandra and Wooley were actually conspiring with Wilson and Faloon—officers of TC's vendor Ready.net, Inc.—to misappropriate Plaintiffs' trade secrets and confidential proprietary information and breach fiduciary duties owed to TC in order to form a new business entity called Tribal Ready, Inc. ("Tribal Ready") and steal TC's customers and business relations. Plaintiffs bring this suit to protect their business interests and recover damages from all Defendants.

2.      TSG was formed in March 2018 by Manager Dan Davis. TSG specializes in providing a range of services to Tribal nations, entities, and enterprises that support efforts in

healthcare, education, broadband expansion, and economic development. TSG has developed an extensive network of contacts and relationships in the Tribal community through its business efforts.

3.    TC is a Native-owned advisory group formed in 2021. TC is an affiliated outgrowth of TSG formed to develop broadband internet access for Native American tribes throughout the United States based on the extensive relationships developed by Davis and others affiliated with TSG over many years.

4.    Valandra and Wooley were tasked as the key persons performing services for TC to develop broadband services and products offered to the various tribes, under the supervision and management of Davis.

5.    In June 2022, TC entered into a relationship with Ready.net, Inc. ("Ready.net") to provide software products in conjunction with the provision of internet services to the various tribes. Wilson is the CEO of Ready.net and Faloon is the COO of Ready.net. Because of their positions at Ready.net, Wilson and Faloon had access to TC's proprietary customer and financial information.

6.    After obtaining access to TC's proprietary information from Valandra, Wilson and Faloon learned that TC had a strong business model. Wilson and Faloon conferred with Valandra and began to line up new investors for a new entity. Wilson and Faloon then conspired with Valandra and Wooley to plan the formation of a new separate entity to replace TC and misappropriate its customers and business. This conspiracy took place secretly without the knowledge of TC's Manager Davis. As part of the conspiracy, Defendants used the computer system of TC to develop their plans, obtain virtually all of TC's financial and proprietary customer

information, establish a timeline to resign from TC, and start operating as a new entity to replace TC.

7.      After secretly planning the new entity and establishing a timeline, the Defendants developed a plan for Wilson to make an offer to Davis to purchase the assets of TC. While the offer was outstanding and then after it was rejected by Davis on December 1, 2022, Valandra and Wooley (while still working for TC) continued to work with Wilson and Faloon to form the new entity (Tribal Ready) and steal TC's business. On December 12 and 14, 2022, Valandra and Wooley resigned from TC as planned, but Defendants continued to use TC's computer system to steal TC's propriety information and contact TC's clients.

8.      Tribal Ready, the new entity created to replace TC, was formed as a Delaware corporation on January 3, 2023.

9.      Plaintiffs bring suit against Defendants for misappropriation of trade secrets in violation of the Defend Trade Secrets Act and Mississippi Uniform Trade Secrets Act, breaches of fiduciary duties, violation of the Computer Fraud and Abuse Act, and conspiracy, among other claims.

## Parties

10.      Plaintiff Tribal Solutions Group, LLC ("TSG") is a Mississippi limited liability company with its principal place of business in Jackson, Mississippi.

11.      Plaintiff Tribal Communications, LLC ("TC") is a Mississippi limited liability company with its principal place of business in Jackson, Mississippi.

12.      Joseph Valandra ("Valandra") is an adult resident citizen of the District of Columbia. Valandra can be served with process at his address 1913 12th St NW, Apt A, Washington, D.C. 20009, or wherever he may be found.

13.     Clayton Wooley ("Wooley") is an adult resident citizen of the State of Mississippi. Wooley can be served with process at his address 1959 Aztec Drive, Jackson, Mississippi 39211, or wherever he may be found.

14.     Jase Wilson ("Wilson") is an adult resident citizen of the State of California. Wilson can be served with process at his address 2348 Gamay Common, Livermore, CA 94550, or wherever he may be found.

15.     Michael Faloon ("Faloon") is an adult resident citizen of the Commonwealth of Massachusetts. Faloon can be served with process at his address 42 Bennett Hill Road, Rowley, MA 01969, or wherever he may be found.

16.     Tribal Ready, Inc ("Tribal Ready") is Delaware corporation formed on January 3, 2023. Tribal Ready can be served with process by serving its Registered Agent for Service of Process, Corporation Service Company located at 251 Little Falls Drive, Wilmington, Delaware 19808.

## Jurisdiction and Venue

17.     This Court has original subject matter herein pursuant to 28 U.S.C. § 1331 because this civil action arises under laws of the United States. Specifically, this Court has subject matter jurisdiction over this matter because it arises under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1), as well as the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and Plaintiffs and Defendants regularly communicate and transact business affecting interstate commerce. Specifically, Valandra wrongfully and without permission accessed data on a protected computer or computer system belonging to TC that was used in or affected interstate commerce or communication and misappropriated trade secrets used to conduct business in interstate commerce for customers in various states.

18.    This Court has supplemental subject matter jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

19.    This Court has personal jurisdiction over all Defendants because Defendants breached contracts with Plaintiffs in whole or in part in Mississippi and committed torts against Plaintiffs, conspired against Plaintiffs, and violated the statutes listed herein to the detriment of Plaintiffs in whole or in part in Mississippi.

20.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of the property that is the subject of this action is situated, in this District and Division.

**Facts**

21.    TC was formed in June 2021 by Davis and others to facilitate the development of broadband internet access for Native American tribes throughout the United States. Davis previously developed extensive relationships with Native American tribes through TSG which provides multi-faceted services for Native American tribes. TC is an affiliate of TSG.

22.    TC is Native American owned with Davis, and its mission is to strengthen Tribal sovereignty, self-determination, and economic independence.

23.    The information accumulated and relationships developed by TSG and TC are proprietary and are of considerable commercial value and place TC in a unique posture to work with Native American tribes in connection with providing broadband services.

24.    TSG contracted with Wooley in May 2021 to consult on network designs and the development of network operations and maintenance as well as other tasks. Wooley entered into an Independent Contractor Agreement with TSG in in May 2021. Once TC was formed, Wooley began working for TC using the confidential and proprietary information previously developed by

TSG. The terms of the Independent Contactor Agreement were confirmed and renewed on June 15, 2022.

25.    On September 23, 2021, TC hired Valandra as Senior Vice President to work to promote and facilitate the development of broadband services for Native American tribes. As with Wooley, TC provided Valandra with confidential and proprietary information previously developed by TSG to perform his duties for TC.

26.    As part of the performance of his duties, Valandra worked to find and develop relationships with business partners to develop and provide broadband services.

27.    In June 2022, Valandra contacted Ready.net, Inc. as a potential supplier of software for the provision of broadband services. To facilitate communications with Ready.net, on June 23, 2022, TC and Ready.net entered into a Reciprocal Non-Disclosure & Confidentiality Agreement ("Confidentiality Agreement") to protect the companies' proprietary information and trade secrets. A true and correct copy of the Confidentiality Agreement is attached hereto as Exhibit A.

28.    The Confidentiality Agreement contains these Paragraphs set forth herein as follows:

4.    The terms "PROPRIETARY" and "PROPRIETARY INFORMATION" shall mean any and all financial information, systems, processes, knowhow, and any other information of a proprietary and confidential nature, including all charts, graphs, diagrams, and summaries depicting the same, whether in printed form or in electronic format stored on, accessed by, or viewable on any computer, server, or any other electronic device owned or used by the hardware or any other removable electronic device, which may be disclosed to or accessed by a Party. These terms shall also include all data and information transferred to or from a Party, which bear a legend stating "PROPRIETARY," "CONFIDENTIAL," or any other words of similar import, or if disclosed orally or visually, by declaring that the information is proprietary, confidential, or of a similar nature. The Parties shall provide the same protection to all electronic forms of transmission of PROPRIETARY INFORMATION (i.e., electronic mail, facsimile, file transfer protocol, etc.) as they are obligated to provide for the other forms of information transmission under this Agreement. The exclusive points of contact for the Parties with respect to the transmission of PROPRIETARY INFORMATION are:

**RECIPIENT:**

> Ready.net, Inc.
> 2261 Market Street, #4198
> San Francisco, CA 94114
> Attn: Mike Faloon

**TC:**

> Tribal Communications, LLC
> 4708 I-55 North, Suite 450
> Jackson, MS 39211
> Attn: Joseph Valandra
> (202) 445-0013

Either Party may change its designation by written notice to the other.

5.     During the term of this agreement and for a period of two (2) years from the date of termination or expiration of this Agreement, the Parties shall take reasonable steps to preserve in confidence PROPRIETARY INFORMATION received from each other and shall, unless otherwise authorized herein, prevent disclosure thereof to third parties. The Parties shall further restrict disclosure of such PROPRIETARY INFORMATION to only those of its employees who have a need to know and who have been advised of the restrictions on disclosure and use and who are bound by the terms of this Agreement or another agreement containing substantially the same terms. The Parties shall be deemed to have discharged its entire obligation hereunder if it exercises the same standard of care to preserve and safeguard the other Party's PROPRIETARY INFORMATION as it uses to preserve and safeguard its own PROPRIETARY INFORMATION. In no event, however, shall the Parties use less than a reasonable standard of care in safeguarding the other Party's PROPRIETARY INFORMATION. Upon discovery by a Party of any unauthorized use or disclosure, that Party promptly shall notify the other Party and shall endeavor to prevent further unauthorized use or disclosure.

6.     PROPRIETARY INFORMATION delivered by either Party shall be for use by the other Party solely for the purpose of TC performing the services which it may be hired to perform for RECIPIENT. No other use of the PROPRIETARY INFORMATION is granted without the written authorization of a Party.

10.     The Parties agree that the United States District Court located in the Southern District of Mississippi shall have exclusive jurisdiction over any dispute arising under or in connection with this Agreement, or the relationship that is the subject matter of this Agreement. The Parties knowingly and voluntarily waive any right they may otherwise have to assert that jurisdiction or venue is improper in the United States District Court, or that pursuant to the *forum non conveniens* doctrine the case should be more conveniently adjudicated in any other sovereign, jurisdiction, country or state. Remedies shall include but are not limited to injunctive relief.

29.     After the Confidentiality Agreement was signed, Valandra emailed Scott Dinsmore of Ready.net on June 24, 2022, and provided him examples of TC's proposals that were

confidential. Dinsmore responded that the information "will be kept in strict confidence." Valandra's email states:

On Fri, Jun 24, 2022 at 9:21 AM Joe Valandra <joev@tribalcommunicationsllc.com> wrote:

Scott

I have attached an example of the type of proposals we are presenting to Tribes. It contains sample of a "Broadband Playbook" that our group prepared for a Parish in Louisiana. Also attached is a concept proposal that we are actively pursuing with three Tribes in South Dakota. All these documents are considered Confidential.

This my give you and Mike a better idea of where we are and the types of projects we are currently working on.

 **Tribal**
Communications

**Joe Valandra**
Sr. Vice President

joev@tribalcommunicationsllc.com

30.    Approximately a week later, on June 30, 2022, TC and Ready.net entered into an agreement whereby Ready.net agreed to provide its online Ready BOSS Funding software as a service product on a subscription basis in connection with TC's submission of grant fund applications.

31.    In July 2022, Faloon, the COO of Ready.net, contacted Valandra by email to introduce him to one of Ready.net's major investors, Ray Tonsing, about potential additional investments into Ready.net. The July 15, 2022 email states:

> **From:** Mike Faloon <mike@ready.net>
> **Date:** Friday, July 15, 2022 at 10:34 AM
> **To:** Joe Valandra <joev@tribalcommunicationsllc.com>, Ray Tonsing <raymond@tonsing.com>
> **Cc:** Jase Wilson <jase@ready.net>
> **Subject:** Ray <> Joe
>
> Ray please meet Joe Valandra, Senior Vice President of Tribal Communications. Tribal Communications has an excellent strategy for closing the digital divide in tribal communities and we're proud to partner with them to make it a reality.
>
> Joe please meet Ray Tonsing an early and major Ready investor who is looking to make an additional investment into Ready. Thank you for making the time Joe.
>
> Regards,
>
> Mike Faloon
> mike@ready.net

32.    On July 22, 2022, TC and Ready.net entered into a non-binding Memorandum of Understanding ("MOU") to collaborate regarding (1) providing support for broadband and other telecommunication projects with Tribal Nations, (2) evaluating funding for Tribal projects, (3) creating marketing collaborations, and (4) cooperating on information technology development and infrastructure. The MOU specifically incorporated by reference the Confidentiality Agreement executed on June 23, 2022 which is attached hereto as Exhibit A. The MOU also contained the following provision:

> 16.1.  Despite the statements and obligations expressed herein, this MOU is a nonbinding expression of the current intentions of the Parties, and neither Party will incur nor be bound to any legal obligations or expense hereunder to the other Party until and unless definitive agreements have been negotiated, approved by the necessary management levels of each Party, and executed and delivered by authorized representatives of both Parties.

33.    On August 30, 2022, Wilson, the CEO of Ready.net, emailed Wooley and Valandra asking them to edit the TC Contact List dated 8-22-22 so Wilson would have his own source file for Tribal contacts. The August 30, 2022 email states:

| | |
|---|---|
| **To:** | Clay Wooley[cwooley@tribalcommunicationsllc.com] |
| **Cc:** | Hunt Jackson[hjackson@tribalcommunicationsllc.com]; Joe Valandra[joev@tribalcommunicationsllc.com]; sdinsmore@ready.net[sdinsmore@ready.net] |
| **From:** | Jase Wilson (via Google Sheets)[drive-shares-dm-noreply@google.com] |
| **Sent:** | Tue 8/30/2022 7:29:29 AM (UTC-05:00) |
| **Subject:** | Spreadsheet shared with you: "8-22-22 TC Contact List" |

## Jase Wilson shared a spreadsheet

Jase Wilson (jase@ready.net) has invited you to **edit** the following spreadsheet:

Source file for tribal contacts. Please see slack msg – can we add firstname / last name for the lower 500?

⊠ 8-22-22 TC Contact List

34.     Ready.net and TC were working together for a broadband proposal to the State of Mississippi, in September and October 2022. During that time period Wilson and Faloon communicated extensively with Wooley and Valandra and traveled to Mississippi on several occasions regarding the potential contract with the State.

35.     While working on the Mississippi project, Defendants surreptitiously discussed forming a new business entity to provide broadband services to Native American tribes using the contacts and relationships that had been provided to Wooley and Valandra by TC and TSG. Defendants intentionally kept their discussions secret from Davis because they intended to exclude TC and create the new entity with capital investments from investors recruited by Wilson.

36.     Defendants then began to craft a false story that TC lacked adequate working capital to pursue its Tribal projects.

37.     On October 14, 2022, Wooley prepared a document named "Background TC," which contained extensive information about TC and described in detail all of TC's Tribal projects. It also contained an assessment of TC describing the assets and liabilities of TC. The assessment of TC listed the many strengths of TC, but falsely noted liabilities of "No working capital" and "Short Staffed."

38.     In an October 23, 2022 email to Valandra and Wooley with the subject "follow up

w Dan?," Wilson raised the issue of possibly reconnecting with Davis and stated in the email:

> Reflecting on convos, I'd love at some point to circle back with Dan to hear more about his journey and vision for the Tribal family of biz and services.
>
> As we make progress together it would be great to talk about how Tribal Comms might be bit unique relative to the other businesses, but under Joe's leadership & using Ready-made platform tools, could ultimately become a powerful conduit for many life-enhancing digital services for Tribal folks throughout the land.
>
> I trust your judgement as to whether and when this makes sense but am excited to reconnect w Dan whenever you think makes sense. Big fan of his journey at minimum, from tough start to helping folks – very inspiring.

39.     After Wilson's October 23, 2022 email, neither Valandra nor Wooley made any

effort to advise Davis of their discussions with Wilson. Instead, they continued to work with

Wilson and Faloon to plan a new entity to replace TC.

40.     On October 30, 2022, Wooley prepared a document titled "Talking Points – Tribal

Ready." In this document, Wooley discussed the revenue of TC, how fast TC has grown, and how

well it has performed financially. But Wooley also discussed how a new entity could provide better

services because of what he described as challenges to TC (all of which were false). The document

dated October 31, 2022 states in part:

> **Challenges:**
> * TC lacks operating capital to grow revenues at the forecasted pace.
> * TC does not have the required personnel to grow at rate the market will allow.
> * TC does not have a capital formation plan to allow for the investments necessary to fully execute the business plan.

41.     While Defendants continued to discuss a new entity and that TC lacked operating

capital, none of them discussed the supposed lack of operating capital with Davis or asked him if

he could procure additional operating capital. Furthermore, none of them advised Davis that they

were surreptitiously discussing the formation of a new entity to replace TC.

42.    On November 21, 2022, Valandra sent an email to Wilson, Faloon, and Wooley attaching the October 31, 2022 "Talking Points – Tribal Ready" document and the October 14, 2022 "Background TC" document that Wooley had prepared. The November 21, 2022 email stated: "We can discuss at your convenience."

43.    Valandra and Wooley continued to conspire with Wilson and Faloon to prepare the formation of Tribal Ready to take the business of TC without the knowledge of Davis. On November 25, 2022, Valandra emailed Chris Wohlsclagel, a newly hired employee of TC, to offer him a job with Tribal Ready. Valandra sent the email offer from his TC email address to Wohlsclagel at his TC email address. The November 25, 2022 email states:

| From: | Joe Valandra [joev@tribalcommunicationsllc.com] |
|---|---|
| Sent: | 11/25/2022 1:19:22 PM |
| To: | Chris Wohlsclagel [cwoosh@tribalcommunicationsllc.com] |
| CC: | Clay Wooley [cwooley@tribalcommunicationsllc.com]; Jase Wilson [jase@ready.net] |
| Subject: | Offer of Employment |
| Attachments: | Chris Wohlsclagel.pdf |

Hello Chris

I am very pleased to attach an offer of employment with Ready. You will be working full time with Tribal Communications on our projects as we strengthen our partnership with Ready.

We are looking forward to having you join the team as we aggressively work toward our Vision for Indian Country and rural America.

 **Tribal**
Communications

**Joe Valandra**
Sr. Vice President
Mobile 202-445-0013
Email joev@tribalcommunicationsllc.com
Web www.tribalcommunicationsllc.com



44.    The offer to Wohlsclagel to join Tribal Ready attached to the November 25, 2022 email from Valandra was signed by Wilson and contained the following excerpts.

To: Chris Wholsclagel

Re: Invitation to join Tribal Ready as a Full Time Employee (FTE)
Role: Director of Network Services

……

Start Date: Monday, December 19
Offer Expires: Monday, November 28, 2022 at 2pm PT

45.      On November 27, 2022, Wilson was in Jackson, Mississippi for a meeting on November 28, 2022, with Mississippi officials regarding the proposal Ready.net and TC were making to the State of Mississippi. On the evening of November 27, 2022, Wilson had dinner with Davis at Anjou in Ridgeland. Wilson discussed how he looked forward to pursuing the broadband networks with Native American tribes, but Wilson still failed to advise Davis of the plans that Defendants had made to form a new business entity that they planned to name Tribal Ready. Wilson also failed to advise Davis that he was going to propose the purchase of TC's assets by Ready.net. Wilson recounted this dinner in his late-night email to Valandra on November 27, 2022, which states:

| To: | Joe Valandra[joev@tribalcommunicationsllc.com]; mpierite[mpierite@tunica.org] |
| --- | --- |
| From: | Jase Wilson[jase@ready.net] |
| Sent: | Sun 11/27/2022 10:36:29 PM (UTC-06:00) |
| Subject: | Ready for next steps tomorrow |

Dear Joe and Chairman Pierite

Great dinner with Dan this evening. He seemed very receptive, and we are ready to move forward in any case. Following up with him tomorrow, I will copy you both.

Joe – Clay relayed you're delayed in travel and arriving late this evening, safe travels and I look forward to seeing you tomorrow.

Thank you,

Jase

46.    On the morning of November 28, 2022, Wilson emailed Wooley and Valandra a draft memo to Davis regarding acquisition of TC and asked for comments.

47.    On the evening of November 28, 2022, Wilson emailed Davis the memo with the proposal with a deadline of December 7, 2022. The offer stated:



Date: 28 November 2022

To: Dan Davis, Founder, Tribal Solutions Group

CC: Joe Valandra, Chairman Pierite, Clay Wooley, Arden Barnett

Subject: Offer to Acquire Tribal Communications, LLC Assets

Greetings Dan,

Thank you for all you've done to help Tribal communities thrive and for making time to connect.

As discussed, we believe in a future in which a standalone go-forward entity dedicated to increasing tribal connectivity infrastructure could help to unleash your full Tribal Solutions Group vision. To that end, Ready is interested in acquiring the assets of Tribal Communications LLC.

We believe in Joe Valandra as the leader of a go-forward entity founded from the outset to meet the rigorous scrutiny setting up around America's largest and last major broadband investments: Tribal-owned as well as Tribal-governed.

With Joe at the helm of a powerhouse team including Chairman Pierite, Clay Wooley, and others we'll need to hire asap, such an entity utilizing Ready's cloud-based broadband resources platform could be well-positioned as a leader in Tribal Broadband, continuing your vision of closing the digital divide in Indian Country and rural America.

The new entity, tentatively known as "Tribal Ready," will need significant attention and resources to capitalize on this rare moment in our nation's history. It is expected that the current headcount will need to grow from two (2) staff members today to twenty-two (22) by the end of 2023. Ready is willing and able to make the $1+mm investment necessary to grow the human resources to capitalize on this moment. Fully realized, the execution of this group could create meaningful distribution channels for key digital services such as those offered by Tribal Solutions Group.

Please find herein a choice between three potential paths forward:

| Offer Mix | Option A | Option B | Option C |
|---|---|---|---|
| Cash | $0 | $250,000<br>Paid in 12 monthly installments | $500,000<br>Paid in 12 monthly installments |
| Equity | 8.0% | 4.0% | 0.0% |
|  | Any path – list Dan Davis as founding team member | | |

Tribal Ready will be incorporated as a Delaware C Corporation with Joe Valandra, Chairman Pierite, Clay Wooley, Scott Dinsmore and Dan Davis granted founder shares on a standard four year vesting schedule with one year cliff. Arden Barnett would be welcome to join full time as well. An employee stock plan will be implemented to incentivize future employees with equity. Ready will make its initial investment into the entity via Simple Agreement for Future Equity ("SAFE") at a $(2.0) million post-money valuation.

The new entity will have five (5) board members that include Joe Valandra, Chairman Pierite, Scott Dinsmore, Mike Faloon, and a to-be-determined independent board member.

To meet the challenging deadlines ahead, we'll need to please firm up and execute a direction asap. Please let us know whether and how you'd like to proceed by Wed 7 Dec 2022 close of business. Thank you again Dan.

Jase Wilson
CEO, Ready.net
816 846 8808
jase@ready.net

48.    The proposal to acquire the assets of TC had been crafted in secrecy by Defendants and ensured that Defendants would work with and have equity in the new entity Tribal Ready. The proposal also included a substantial investment by Ready.net. As noted in the proposal, Wilson stated that "To meet the challenging deadlines ahead, we'll need to please firm up and execute a

direction asap." The proposal also asked that Davis advise whether and how he would like to proceed by Wednesday, December 7, 2022.

49.    The proposal described a business opportunity for TC that Defendants never raised with Davis until it was suddenly placed before Davis as an opportunity that had to be addressed almost immediately.

50.    On December 1, 2022, Davis advised Wilson that he did not want to sell the assets of TC and declined the proposal.

51.    After Davis declined the proposal, Defendants simply proceeded to execute their plan to form Tribal Ready without regard to the rights and property of TC and TSG.

52.    After Davis declined the proposal, Wooley and Valandra continued to email each other regarding business issues for Tribal Ready.

53.    On December 1, 2022, Wooley used his TC email account to email a local realtor about potential new office space. The email stated:

On Dec 1, 2022, at 11:46 AM, Clay Wooley <cwooley@tribalcommunicationsllc.com> wrote:

Good morning John and Mike,

I'm glad everyone had the opportunity to meet at Fertile Ground the other day! John, thank you again for taking time to show us the space so last minute. I wanted to connect you via email to discuss options and terms for the various office locations in Jackson. I am available to look at other spaces if the need arises and it would be helpful to have a couple of options for comparison.


Thank you,


<image001.png>    **Clayton Wooley**
Director, Technical Services

Mobile 601-826-2014 Office 769-798-9692
Email cwooley@tribalcommunicationsllc.com
Web www.tribalcommunicationsllc.com

54.    On December 5, 2022, Valandra used his TC email account to send Wilson, Faloon, and Wooley a Transition Memo. The memo contained a time line to follow to form Tribal Ready as follows:

1.  Timeline
        a.  December 8, 2022
                i. JV & CW resign
                ii.Consulting Agreements – JV & CW
        b.  December 16, 2022
                i. Complete 1st draft of strategic plan
        c.  December 19, 2022
                i. Complete formation of "TribalReady"
        d.  January 9, 2023
                i. Announce new company
                ii.JV, CW, and Woosch become employees of TR
        e.  Before end of January 2023
                i. First Board Meeting



55.    The Transition memo also discussed evaluation of TC's current strategic partners and listed all of TC's Tribal projects and other projects and partners. In addition, the Transition memo discussed evaluating TC's business partners and merging them into Tribal Ready as follows:

4.  Trusted Strategic Partners – Listing attached
        a.  Evaluation of TC current TSPs
        b.  Merging selected TC and Ready partners

56.    The Transition Memo contained the confidential and proprietary information of TC and TSG and clearly demonstrates Defendants' intent to simply take what Davis declined to sell them.

57.    Also, on December 5, 2022 at 9:49 AM, when he knew he would be leaving TC for Tribal Ready, Wooley updated the TC Current Projects List Memo. This was a confidential list and a trade secret of TC and TSG. Defendants planned to use this list to misappropriate TC's

contracts and take them for Tribal Ready. Preceding the list of projects with the current status and plans for each project, the Memo stated as follows:

> The following is an updated list of projects we are currently working on and/or following up. The projects are growing in scope and type.
>
> We are seeing continuing to see very positive momentum and expect to see our project list grow substantially over the coming 3 months.
>
> Please contact me with any questions or comments.

58.     Defendants did not have any further discussions with Davis about pursuing the Tribal broadband business by working with or through TC. Instead they simply proceeded to prepare to resign from TC and take TC's business opportunities and trade secrets to Tribal Ready without regard to TC's and TSG's rights in their business opportunities and trade secrets.

59.     On December 9, 2022, Valandra emailed Faloon, Wilson, and Wooley with several action items to make the transaction would proceed smoothly. Defendants wanted to make sure they took everything before they resigned. The email stated:

| From: | Joe Valandra [joev@tribalcommunicationsllc.com] |
|---|---|
| Sent: | 12/9/2022 1:43:00 PM |
| To: | Mike Faloon [mike@ready.net]; Jase Wilson [jase@ready.net]; Scott Dinsmore [sdinsmore@broadband.money]; Clay Wooley [cwooley@tribalcommunicationsllc.com]; Chris Wohlsclagel [cwoosh@tribalcommunicationsllc.com] |
| Subject: | Transition |
| Importance: | High |
| Flag: | Flag for follow up |

Hello

After giving the transition some more thought there are a couple of key items that need to be addressed for this to go as smoothly as possible.

1.      Email addresses for TribalReady. We will have all the TC emails forwarded to our new email for as long as possible. This will give us time give proper notice to all
2.      Backup current emails, contacts, and calendars – need this for many very important reasons.
3.      Talk with a couple of key clients and contacts so that information is factually conveyed to avoid unnecessary gossip etc.
4.      Get the details for the short-term consulting agreements for Clay and me correct and executed.

So, the plan is for my letter of resignation to be emailed to Dan on Monday effective as of Monday. I believe that Clay will have the same timeline. The consulting agreements will take effect on Monday for an initial term of 30 days extendable if needed.

**Tribal**
Communications

**Joe Valandra**
Sr. Vice President

60.     On December 12, 2022 at 8:16 a.m. Valandra emailed Davis to resign from TC effective that day.

61.     Despite his resignation on December 12, 2022 at 8:16 a.m., Valandra continued to email TC's business partners on December 12, 2022 at 10:19 PM using his TC email account to pursue business interests of TC for Tribal Ready.

62.     On December 14, 2022, Wooley emailed Davis to resign from TC effective December 15, 2022.

63.     On December 16, 2022, Valandra again used his TC email account to email TC contacts for Tribal Ready.

64.     Valandra continued to access his TC email account as late as December 26, 2022 without permission.

65.     Tribal Ready, Inc. was formed as a Delaware corporation on January 3, 2023. Upon information and belief, its officers, directors, shareholders, and/or principals include Wilson, Faloon, Valandra, and Wooley.

**COUNT I**
**BREACH OF CONTRACT**
**(AGAINST WOOLEY)**

66.     TC and TSG incorporate by reference and reallege the averments in the preceding paragraphs of the Complaint.

67.     Wooley was retained as an independent contractor in May 2021 to provide services to TC. Wooley entered into his Independent Contactor Agreement with TSG instead of TC because TC had not yet been formed as a new entity. Wooley confirmed the terms of the Independent Contractor Agreement with TSG for another year on June 15, 2022. Wooley always worked for TC, however, and upon the formation of TC, the benefits and obligations of the Independent Contractor Agreement were shared by TSG with TC, its affiliate.

68.     Wooley was aware that he would be exposed to confidential information and trade secrets of TC and TSG and agreed to keep that information confidential.

69.     Despite his agreement, Wooley breached his Independent Contractor Agreement by disclosing confidential data to Wilson and Faloon for the purpose of forming a new company, eventually formed as Tribal Ready, and not for the routine business of TC and TSG.

70.     Wooley has breached his Independent Contractor Agreement by acting on behalf of Tribal Ready and his co-conspirators to solicit persons and entities with whom TC and TSG had contracts, was negotiating contracts, and were affiliated with TC for transactions related to business opportunities introduced or created by TC and TSG. Wooley has also breached his Independent Contractor Agreement by working with Valandra, Wilson, Faloon, and Tribal Ready to induce persons and entities to terminate or alter their relationship with TC and TSG.

71.     Wooley has breached his Independent Contractor Agreement by circumventing TC and TSG with respect to business dealings introduced in connection with this Agreement.

72.     Wooley has breached his Independent Contractor Agreement by the unauthorized use and disclosure of individuals, entities, products, and services of TC and TSG and their related information. This information constitutes business opportunities, trade secrets, and the goodwill of TC and TSG. The unauthorized use and disclosures by Wooley constitute unfair competition and have caused irreparable harm to TC and TSG.

73.     Wooley has breached his Independent Contractor Agreement by communicating with persons introduced by TC and TSG, interfering with contract negotiations between TC and entities introduced by TC and TSG, and engaging in those communications without disclosing those communications to TC and TSG.

74.     Wooley's breaches of the Independent Contractor Agreement have caused irreparable harm and damage to TC and TSG.

75.     The Court should enter a preliminary and permanent injunction to prevent further irreparable harm to TC and TSG and award actual and exemplary and/or punitive damages and attorneys' fees and costs to TC and TSG.

**COUNT II**
**MISAPPROPRIATION OF TRADE SECRETS UNDER**
**THE FEDERAL DEFEND TRADE SECRETS ACT**
**(AGAINST ALL DEFENDANTS)**

76.     TC and TSG incorporate by reference and reallege the averments in the preceding paragraphs of the Complaint.

77.     Wooley and Valandra surreptitiously misappropriated TC's and TSG's confidential business information and emailed that confidential business information to Wilson, Faloon, and Tribal Ready.

78.     This confidential business information includes trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1125 *et seq.* ("DTSA"), as it consists of customer proposals, pricing information, customer contact information, estimating and forecasting tools, customer specific data, and other information necessary for Wooley, Valandra, Wilson, Faloon, and Tribal Ready to maintain an unfair and unlawful competitive advantage.

79.     Wooley and Valandra improperly copied, retained, disclosed and/or emailed the information of all of TC's Tribal projects to Wilson and Faloon to use with the new business entity named Tribal Ready. Wooley and Valandra agreed to back up their TC emails, contacts, and calendars and share them with Wilson and Faloon to use to compete against TC with their new business entity, Tribal Ready.

80.    TC and TSG took reasonable steps to maintain the secrecy of the misappropriated information by limiting its dissemination and entering into the Confidentiality Agreement attached hereto as Exhibit A. TC and TSG expressly advised Wooley in conjunction with his Independent Contractor Agreement that such information is confidential and not to be disclosed for any purpose other than authorized business for TC's benefit. Valandra, who has a law degree from the University of Minnesota, was clearly aware of the confidential nature of TC's and TSG's proprietary business information.

81.    Defendants have used and plan to continue to use TC's and TSG's trade secrets to benefit themselves in order to obtain revenue from Tribal projects. TC and TSG are facing a real threat that Defendants will use, continue to use, and disclose TC's and TSG's trade secrets to benefit themselves to TC's and TSG's detriment. TC and TSG have suffered and will continue to suffer irreparable harm that cannot be measured in precise monetary damages and are entitled to injunctive relief to prevent further irreparable harm under the DTSA.

82.    The DTSA allows for a private civil action to be brought by the owner of a misappropriated trade secret "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Defendants have used and will continue to use the misappropriated information to provide services in interstate and global commerce.

83.    Wooley and Valandra knew that the confidential business information they misappropriated constituted trade secrets and that they are not authorized to possess, use, disclose, or retain those secrets. Wilson, Faloon, and Tribal Ready likewise knew, or should have known, that the confidential business information belonging to TC and TSG that Wooley and Valandra

provided to them was taken without authorization and in violation of Wooley's and Valandra's confidentiality obligations.

84.    Defendants engaged in the misappropriation described above with willful, malicious, and improper motives, and with reckless indifference to TC's and TSG's rights.

85.    As a direct and foreseeable result of the misappropriation, TC and TSG have suffered irreparable harm, injuries, and damages, and will continue to suffer irreparable harm, injury, and damages, including but not limited to, loss of relevant market share, injury to business reputation and goodwill, and attorneys' fees and costs. TC and TSG are entitled to preliminary and permanent injunctive relief, and to recover damages, including exemplary and/or punitive damages and attorney's fees, in an amount to be established at trial.

**COUNT III**
**MISAPPROPRIATION OF TRADE SECRETS UNDER**
**THE MISSISSIPPI UNIFORM TRADE SECRETS ACT**
**(AGAINST ALL DEFENDANTS)**

86.    TC and TSG incorporate by reference and reallege the averments in the preceding paragraphs of the Complaint.

87.    Wooley and Valandra surreptitiously misappropriated TC's and TSG's confidential business information and emailed that confidential business information to Wilson, Faloon, and Tribal Ready.

88.    This confidential business information includes trade secrets under the Mississippi Uniform Trade Secrets Act, Miss. Code Ann. § 75-26-1 *et seq.* ("MTSA"), as it consists of customer proposals, pricing information, customer contact information, estimating and forecasting tools, customer specific data, and other information necessary for Wooley, Valandra, Wilson, Faloon, and Tribal Ready to maintain an unfair and unlawful competitive advantage.

89.    Wooley and Valandra improperly copied, retained, disclosed, and/or emailed the information of all of TC's Tribal projects to Wilson and Faloon to use with the new business entity named Tribal Ready. Wooley and Valandra agreed to back up their TC emails, contacts, and calendars and share them with Wilson and Faloon to use to compete against TC with their new business entity, Tribal Ready.

90.    TC and TSG took reasonable steps to maintain the secrecy of the misappropriated information by limiting its dissemination and by expressly advising Wooley in his Independent Contractor Agreement that such information is confidential and not to be disclosed for any purpose other than authorized business for TC's benefit. Valandra, who has a law degree from the University of Minnesota, was clearly aware of the confidential nature of TC's and TSG's proprietary business information.

91.    Defendants have used and plan to continue to use TC's and TSG's trade secrets to benefit themselves in order to obtain revenue from Tribal projects. TC and TSG are facing a real threat that Defendants will use, continue to use, and disclose TC's and TSG's trade secrets to benefit themselves to TC's and TSG's detriment. TC and TSG therefore have suffered and will continue to suffer irreparable harm that cannot be measured in precise monetary damages and are entitled to injunctive relief to prevent further irreparable harm under Miss. Code Ann. § 75-26-5.

92.    Wooley and Valandra knew that the confidential business information they misappropriated constituted trade secrets and that they are not authorized to possess, use, disclose, or retain those secrets. Wilson, Faloon, and Tribal Ready likewise knew, or should have known, that the confidential business information belonging to TC and TSG that Wooley and Valandra provided to them was taken without authorization and in violation of Wooley's and Valandra's confidentiality obligations.

93.    The MTSA allows for a private civil action to be brought by the owner of a misappropriated trade secret for damages. Under Miss. Code Ann. § 75-26-7, "Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret."

94.    TC and TSG are entitled to damages from Defendants for all damages allowed by Miss. Code Ann. § 75-26-7.

95.    Because Defendants' misappropriation is willful and malicious, the Court should award exemplary damages against Defendants.

96.    As a direct and foreseeable result of the misappropriation, TC and TSG have suffered irreparable harm, injuries, and damages, and will continue to suffer irreparable harm, injury, and damages, including but not limited to, loss of relevant market share, injury to business reputation and goodwill, and attorneys' fees and costs. TC and TSG are entitled to recover damages, including exemplary damages and attorney's fees, in an amount to be established at trial.

### COUNT IV
### BREACH OF FIDUCIARY DUTIES AND/OR DUTIES OF
### GOOD FAITH AND LOYALTY
### (AGAINST VALANDRA AND WOOLEY)

97.    TC and TSG incorporate by reference and reallege the averments in the preceding paragraphs of the Complaint.

98.    Valandra, as Senior Vice President of TC, and Wooley, as an independent contractor with a written contract, owed fiduciary duties to TC, including duties to act in good

faith and with loyalty, as TC's officer and contractor. While performing their duties for TC they both had a high degree of managerial responsibility and TC placed a great deal of trust in them.

99.    Valandra and Wooley breached their fiduciary duties of good faith and loyalty by providing TC's confidential information and trade secrets to Wilson, Faloon, and Tribal Ready and working with Wilson and Faloon to create a new entity, Tribal Ready, to steal TC's business.

100.    Valandra and Wooley breached their fiduciary duties of good faith and loyalty by failing to disclose to TC that Wilson and Faloon (with Valandra and Wooley's help) were planning to and in fact did create a new entity, Tribal Ready, to steal TC's business.

101.    Valandra and Wooley breached their fiduciary duties of good faith and loyalty by using the computer system and other assets of TC to misappropriate TC's and TSG's trade secrets and to create a new entity to steal TC's business.

102.    As a direct and foreseeable result of the breaches of fiduciary duties, TC has suffered irreparable harm, injuries, and damages, and will continue to suffer irreparable harm, injury, and damages, including but not limited to, loss of relevant market share, injury to business reputation and goodwill, exemplary and/or punitive damages, and attorneys' fees and costs. TC is entitled to recover damages, including exemplary damages and attorney's fees, in an amount to be established at trial.

**<u>COUNT V</u>**
**<u>VIOLATION OF COMPUTER FRAUD AND ABUSE ACT,</u>**
**<u>18 U.S.C. § 1030(A)(2)(C) AND 18 U.S.C. § 1030 (A)(4)</u>**
**<u>(AGAINST VALANDRA)</u>**

103.    TC and TSG incorporate by reference and reallege the averments in the preceding paragraphs of the Complaint.

104.    TC's computers and computer systems, including those used by Valandra and Wooley are "protected computers" under the Computer Fraud and Abuse Act because they are used in and affect interstate commerce and communication. 18 U.S.C. § 1030(e)(2)(B).

105.    Valandra intentionally accessed TC's computer and computer system without authorization and exceeded his authorized access in violation of 18 U.S.C. § 1030(a)(2) and obtained information from those computers after his resignation that he was not entitled to access or obtain. Valandra accessed his email files and used the computers to send emails to TC contacts and business partners in a manner to appear that he was still an officer of TC. Valandra also deleted email files in an attempt to conceal his actions.

106.    Valandra, knowingly and with intent to defraud, accessed TC's computer and computer system without authorization and exceeded his authorized access in violation of 18 U.S.C. § 1030(a)(4) and by means of that conduct furthered the intended fraud. and obtained information with a value in excess of $5000 in a 1-year period.

107.    By reason of the above-alleged acts and conduct, TC has been damaged in excess of $5,000 in less than a one-year period, including the value of the lost information and data (which included certain confidential information and trade secrets), and costs and expenses associated with this loss, which includes and/or may include forensic and diagnostic examinations of TC's computers and computer systems to ascertain the full extent of deleted or destroyed information, and other consequential damages and losses incurred because of the deletion, destruction, or impairment of TC's data, programs, systems, and/or information.

108.    As a direct and proximate result of Valandra's wrongful acts and conduct outlined above, TC has suffered and will continue to suffer monetary damages and other loss. TC is

incurring these damages and losses on a continuing basis, and TC is entitled to compensatory damages for any and all such damages and losses.

109.    Because Valandra's conduct was committed intentionally, knowingly, and with wanton, malicious, and callous disregard of TC's legitimate rights, TC is entitled to and now seeks to recover exemplary and/or punitive damages to the full extent allowed by law.

110.    TC further seeks all relief allowed under the law and which the Court deems appropriate, including attorneys' fees and costs.

**COUNT VI**
**TRESPASS TO CHATTELS**
**(AGAINST VALANDRA AND WOOLEY)**

111.    TC and TSG incorporate by reference and reallege the averments in the preceding paragraphs of the Complaint.

112.    TC's computers and computer systems, including without limitation it computer servers, and documents and electronically stored information ("ESI") therein are the personal property of TC.

113.    Valandra and Wooley misappropriated non-public documents and ESI from TC's files and computer systems.

114.    Valandra and Wooley were aware that their actions were not authorized by TC.

115.    Valandra and Wooley have knowingly, intentionally, and without authorization used and intentionally trespassed upon TC's property.

116.    Valandra and Wooley's trespass on TC's property was willful, malicious, oppressive, and in wanton and conscious disregard of TC's rights. TC is, therefore, entitled to an award of punitive damages to punish their wrongful conduct and to deter future wrongful conduct.

117.    As a result of the wrongful conduct of Valandra and Wooley, TC has been damaged in an amount to be proved at trial.

## COUNT VII
## CIVIL CONSPIRACY AND/OR CONTRIBUTORY BREACH OF FIDUCIARY DUTIES
## (AGAINST ALL DEFENDANTS)

118.    TC and TSG incorporate by reference and reallege the averments in the preceding paragraphs of the Complaint.

119.    Wilson, Faloon, Valandra, and Wooley agreed to form a new business entity, Tribal Ready, with the unlawful purpose of misappropriating the confidential information and trade secrets of TC and TSG in order to interfere with TSG and TC's relationships with its Tribal clients and trusted business partners and transfer those relationships from TSG and TC to Tribal Ready.

120.    Defendants committed overt acts in furtherance of this conspiracy by using TC's computer system and downloading and emailing TC's and TSG's confidential information and trade secrets.

121.    Wilson and Faloon contributed to, facilitated, assisted, and/or participated in the breaches of fiduciary duties by Valandra and Wooley, thereby rendering Wilson and Faloon also liable for Valandra and Wooley's fiduciary breaches.

122.    Tribal Ready has knowingly, intentionally, and without authorization accepted, used, and benefited from the conspiratorial acts and fiduciary breaches of the other Defendants, thereby constituting ratification of and active and material participation in their wrongful conduct alleged herein. Tribal Ready is therefore also liable for conspiracy and contributory breach of fiduciary duties.

123.    TC has suffered damages and will continue to suffer damages by Defendants' use of their trade secrets.

124.    TC and TSG are entitled to all damages they can prove at trial, including damages measured by unjust enrichment to Defendants or similar equitable principles, compensatory

damages, a reasonable royalty for Defendants' unauthorized use of their property and/or trade secrets, exemplary and/or punitive damages, and attorneys' fees and costs.

**COUNT VIII**
**CONVERSION**
**(AGAINST ALL DEFENDANTS)**

125.    TC and TSG incorporate by reference and reallege the averments in the preceding paragraphs of the Complaint.

126.    Defendants are in possession of Plaintiffs ESI and physical property that constitute trade secrets as well as profits wrongfully obtained by use of Plaintiffs' property which they have no right to retain and have refused to return despite demand from Plaintiffs. Furthermore, despite repeated demands, Wooley has refused to return the computer provided to him by TC and other written and electronic property of TC.

127.    Plaintiffs are entitled to the return of their property and all damages resulting from Defendants' conversion.

**COUNT IX**
**CONSTRUCTIVE TRUST/UNJUST ENRICHMENT**
**(AGAINST ALL DEFENDANTS)**

128.    TC and TSG incorporate by reference and reallege the averments in the preceding paragraphs of the Complaint.

129.    Defendants are in are in possession of Plaintiffs ESI and physical property that constitute trade secrets as well as  profits wrongfully obtained by use of Plaintiffs' property which in good conscience and justice they should not be entitled to retain.

130.    TC and TSG are entitled to all damages they can prove at trial, including damages measured by unjust enrichment to Defendants or similar equitable principles, a reasonable royalty for Defendants' unauthorized possession and use of their property and trade secrets, compensatory

damages, a constructive trust comprising all of Defendants' ill begotten profits that should be paid to Plaintiffs, exemplary and/or punitive damages, and attorneys' fees and costs.

**COUNT X**
**PUNITIVE DAMAGES**
**(AGAINST ALL DEFENDANTS)**

131.    TC and TSG incorporate by reference and reallege the averments in the preceding paragraphs of the Complaint.

132.    Defendants' willful and malicious misappropriation of trade secrets and other tortious conduct has caused damage to TC and TSG and warrants the imposition or exemplary and punitive damages and attorneys' fees against all Defendants in favor of TC and TSG in accordance with Miss. Code Ann. § 11-1-65 and § 75-26-7.

**DEMAND FOR RELIEF**

WHEREFORE, TC and TSG request the following relief:

A.    A judgment in Plaintiffs' favor against the Defendants, jointly and severally, awarding all compensatory damages, including all consequential damages and reasonable royalties, incurred by TC and TSG in an amount to be proved at trial;

B.    A judgment in Plaintiffs' favor against the Defendants, jointly and severally, awarding punitive damages in the maximum amount allowed by Miss. Code Ann. § 11-1-65;

C.    A judgment in Plaintiffs' favor against the Defendants, jointly and severally, ordering the disgorgement of all profits wrongfully obtained by Defendants and/or a constructive trust for all future profits wrongfully obtained by Defendants and all property wrongfully retained or used by Defendants;

D.    An order commanding the return of all of Plaintiffs' property wrongfully retained by Defendants, including but not limited to the return computers and other electronic devices that Defendants have to date failed to return despite Plaintiffs' demands to do so;

E.    A judgment in Plaintiffs' favor against the Defendants, jointly and severally, awarding them all pre- and post-judgment interest;

F.    A judgment in Plaintiffs' favor against the Defendants, jointly and severally, awarding them all attorneys' fees and costs incurred in connection with this dispute;

G.     A preliminary and permanent injunction prohibiting Defendants from using any and all trade secrets and confidential information of Plaintiffs to engage in business with Plaintiffs' business partners and clients or prospective clients; and

H.     All such other relief as this Court deems just and proper.

## JURY DEMAND

TC and TSG hereby assert their demand for a trial by jury on all claims and issues so triable.

Dated: January 6, 2023

Respectfully submitted,

TRIBAL SOLUTIONS GROUP, LLC and
TRIBAL COMMUNICATIONS, LLC

By Their Attorneys,

JONES WALKER LLP

By: _s/ Neville H. Boschert_
        NEVILLE H. BOSCHERT

Neville H. Boschert (MS Bar No. 3697)
   nboschert@joneswalker.com
Andrew S. Harris (MS Bar No. 104289)
   aharris@joneswalker.com
JONES WALKER LLP
190 East Capitol St., Suite 800
Jackson, MS 39201
Tel.: (601) 949-4900; Fax: (601) 949-4804