IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| TRIBAL SOLUTIONS GROUP, LLC AND<br>TRIBAL COMMUNICATIONS, LLC | PLAINTIFFS |
| V. | CIVIL ACTION NO. 3:23-cv-00010-CWR-LGI |
| JOSEPH VALANDRA; CLAYTON WOOLEY;<br>JASE WILSON; MICHAEL FALOON;<br>READY.NET, INC.; AND TRIBAL READY, INC.<br>N/K/A TRIBAL READY, PBC | DEFENDANTS/<br>COUNTER-PLAINTIFFS |
| V. | |
| TRIBAL SOLUTIONS GROUP, LLC;<br>TRIBAL COMMUNICATIONS, LLC;<br>DAN C. DAVIS AND TC2, LLC | COUNTER-DEFENDANTS |
| *And* | |
| DAN C. DAVIS | COUNTER-PLAINTIFF |
| V. | |
| JOSEPH VALANDRA; CLAYTON WOOLEY;<br>JASE WILSON; MICHAEL FALOON;<br>READY.NET, INC.; AND TRIBAL READY, INC.<br>N/K/A TRIBAL READY, PBC | COUNTER-DEFENDANTS |

### MEMORANDUM OF AUTHORITIES IN SUPPORT OF TC PARTIES' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE*

Plaintiffs/Counter-Defendants Tribal Solutions Group, LLC ("TSG") and Tribal Communications, LLC ("TC") (collectively "Plaintiffs") together with Counter-Defendants Dan C. Davis ("Davis") and TC2, LLC ("TC2") (all collectively referred to as "TC Parties") submit this Memorandum of Authorities in Support of TC Parties' Opposition to Defendants' Motions *in Limine*.

#103498744v6

## ARGUMENT

**I.    The Ready Parties' Motion that "Plaintiffs should be required to honor the legal distinctiveness of TC, TSG, TC2, and other non-party entities" should be denied.**

A request to "honor the legal distinctiveness" of different parties is not a motion *in limine*. "A motion *in limine* is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds." *In re Vann*, No. 3:21-CV-305-DPJ-ASH, 2024 U.S. Dist. LEXIS 227718, at *2 (S.D. Miss. 2024) (quoting *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977)).  The Ready Parties do not specify exactly what they are asking the Court to preclude the TC Parties from saying or offering into evidence.  The vagueness of the Ready Parties' Motion demonstrates that whatever concern they have, it is best dealt with through specific objections at trial.

For instance, the TC Parties have, throughout this litigation, used the shorthand "TC Parties" because Tribal Solutions Group and Tribal Communications, LLC are Plaintiffs, Dan Davis and TC2, LLC are Counter-Defendants, and Dan Davis is also a Counter-Plaintiff, yet all are represented by the same lawyers. Referring to this group of related entities and persons as "Plaintiffs, Counter-Defendants, and Counter-Plaintiff" is cumbersome, as is naming each party every time.  It's unclear whether the Ready Parties claim that using this shorthand would somehow fail to "honor the TC Parties' legal distinctiveness." For that matter, it's also unclear whether using the pronoun "they," or any other collective noun, would cross whatever line the Ready Parties are trying to draw.  Prohibiting the TC Parties' counsel from *ever* referring to their clients as a group will only result in everyone's becoming tongue-tied.

#103498744v6

Regardless of the vagueness of whatever limits the Ready Parties are trying to set, the Ready Parties have not shown that any preemptive restriction on how the TC Parties can refer to themselves is necessary. The TC Parties have not claimed they are legally indistinct, and they do not intend to present themselves as a single enterprise.[1] The Ready Parties point to one description of TC as an "an affiliated outgrowth of TSG." [Doc. 151, p. 1]. This is accurate. TC is an "outgrowth" of TSG in that it was formed and was owned by many of the same parties who formed and owned TSG, and the TC Parties have treated TC as "affiliated" with TSG since its inception.[2] Describing the two entities as "affiliated" when they shared a common owner and common management is not characterizing them as a "single enterprise," nor is it misleading. Even counsel for the Ready Parties has acknowledged the TC Parties' relationship and common ownership, and so has referred to the TC Parties collectively."[3]

Where the evidence is specific to only one party, the TC Parties will refer to that particular party. The TC Parties will explain the legal and functional relationship between the Tribal Communications and Tribal Solutions Group, including how each was begun, and how Dan Davis

---

[1] The TC Parties' substantive briefing has consistently treated the entities as separate. *See* Doc. 174, p. 5 ("Before TC was officially formed in 2021, TSG hired Wooley as an independent contractor to work for TC. TSG renewed Wooley's agreement in 2022, but Wooley continued to work for TC."); *id.* ("Wooley and Valandra also participated in weekly calls with members of TSG where they discussed their business activities and how to assist each other. . . . Because of this trust and sharing of information, Wooley and Valandra owed fiduciary duties to TSG as well as TC."); *id.* at p. 12 ("While Wooley had a written agreement only with TSG, he had an oral agreement to work for TC and in fact did work for TC.").

[2] *See, e.g.*, Exhibit B, Dec. 7, 2021, Email from Valandra ("I am now working with Tribal Communications. TC is part of the larger Tribal Solutions Group. We are delivering services to tribes in the areas of Education, Medical, Purchasing, and Broadband. It is an exciting Tribally owned company."); Exhibit C, Tribal Solutions Group Brochure; Exhibit D, Jan. 6, 2022, Email from James Robinson to a potential client (describing TSG as "a native-owned company with expertise in Education, Medical, Broadband, and Buying solutions.").

[3] *See* Exhibit E, Robinson Depo., 54:15–18 ("Q. Was it your understanding that Ready.Net was interested in acquiring Tribal Communications only or for any one or more of **the other companies within the Tribal Solutions Group?**" (emphasis added); *id.* at 7:2–5 ("Q. When did you first begin employment with **any of the Dan Davis-owned entities**, Tribal Solutions Group, Tribal Solutions Medical, whichever one it was?" (emphasis added)).

owns an interest in each. They will further put on evidence that the customer contact lists at issue belonged to <u>both</u> TC and TSG, but the remaining trade secrets belonged only to TC.[4] To the extent the Ready Parties wish to cross-examine witnesses on these ownership issues, they can. Or if the TC Parties' counsel misspeaks and uses a collective noun (or, given the similarity of the names, the *wrong* name), the Ready Parties can object. But a vague, blanket motion in *limine* is inappropriate and unnecessary.

    **II.    The Ready Parties' Motion to exclude any arguments that the Ready Parties stole the TC Parties' business should be denied.**

Just as with their first motion, the Ready Parties' second motion in *limine* attempts to force the TC Parties' counsel to talk like robots. They ignore the way human beings use the English language and what the words they seek to exclude actually mean.

First, the Ready Parties object to any characterization of what they took as "business." The word "business" has ten definitions, including a "commercial or sometimes an industrial enterprise," "dealings or transactions of an economic nature," "a particular field of endeavor," and the very broad "affair, matter." *See* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/business (last visited Feb. 6, 2025). Of course the trade secrets and business opportunities the Ready Parties took qualify as "business." But more than this, Wooley and Valandra, as the sole employees of Tribal Communications,[5] constituted the entire "business" of Tribal Communications. When they conspired with Ready.Net while employed by TC and then ultimately resigned from TC to form Tribal Ready—misappropriating trade secrets and destroying evidence on their way out—not only was there was no one left to run Tribal Communications, but

---

[4] This issue is discussed at length in the TC Parties' Consolidated Opposition to the Ready Parties' MSJ, at pp. 23, 25–26. *See also* Exhibit A, 30(b)(6) Deposition of Charles Rice, 57:14–17 ("yes, Tribal Communications and Tribal Solutions Group, whatever trade secrets were taken, they inure to the benefit of both organizations").

[5] Chris Wohlsclagel was hired shortly before all three resigned to work for Tribal Ready.

#103498744v6

there was no one who knew where Valandra and Wooley left off, such as what projects were being pitched, what communications needed to be followed up on, etc. The business had to be rebuilt from the ground up.[6] And while TC is not *out of* business, this does not mean it did not *lose* business when the Ready Parties *took* that business. The evidence supports use of the word "business" to describe what the Ready Parties took, and no one will be misled or prejudiced by the occasional use of this word.

Similarly, the Ready Parties claim the TC Parties should use the words "usurp" or "misappropriate," rather than "steal"—but the first synonym of both words is "steal." *See Usurp*, MERRIAM-WEBSTER THESAURUS, https://www.merriam-webster.com/thesaurus/usurp (last visited Jan. 21, 2025); *Misappropriate*, MERRIAM-WEBSTER THESAURUS, https://www.merriam-webster.com/thesaurus/misappropriate (last visited Jan. 21, 2025). Because the words "steal" and "misappropriate" are synonymous, courts throughout this Circuit use the word "steal" in their opinions dealing with trade secret misappropriation claims. *See, e.g., Hum. Regenerative Techs. LLC v. Precision Allograft Sols., LLC,* No. SA-24-CV-00147-JKP, 2024 U.S. Dist. LEXIS 88182, at *20 (W.D. Tex. 2024) ("If Alamo is ultimately found to have misappropriated HRT's trade secrets, Alamo should suffer the consequences of building its business with **stolen trade secrets**."); *Univ. of Miss. Med. Ctr. v. Sullivan*, No. 3:19-CV-459-CWR-LGI, 2022 U.S. Dist. LEXIS 80715, at *2 (S.D. Miss. 2022) ("University of Mississippi Medical Center (UMMC) alleges that the defendants misappropriated trade secrets by stealing patient information, and then used this **stolen information** to build the hemophilia clinic at Mississippi Center for Advanced Medicine, P.C. (MCAM) and enrich themselves."); *Vest Safety Med. Servs., LLC v. Arbor Envtl.,*

---

[6] Exhibit A, 30(b)(6) Deposition of Charles Rice, 100:15–25 ("Joe and Clay had been working for some time, and basically, when they left, we had to start from scratch. We didn't have information on, really, who they were talking to . . . . But, you know, it was already a start-up and, you know, basically, we had to start all over.").

*LLC*, No. H-20-0812, 2020 U.S. Dist. LEXIS 124453, at *8 (S.D. Tex. 2020) ("Defendants argue that Vest has not stated a claim for misappropriation of trade secrets because the **information stolen** was not secret."). If courts use the words interchangeably, the parties should be allowed to as well.

The Ready Parties themselves use the words "misappropriate" and "usurp," but these terms are just as pejorative as "steal"—they are just less commonly known. The TC Parties' counsel should not be barred from speaking plainly to the jury. And it cannot be prejudicial to describe the Ready Parties' conduct for what it was: wrongfully taking (i.e., stealing) the TC Parties' resources to form a competing entity. To grant this motion would be akin to preventing a prosecutor or witnesses in a murder trial from using the word "killed" because the language is too inflammatory.

## CONCLUSION

For the reasons stated above, the TC Parties respectfully request that the Court deny the Ready Parties' Motion *in Limine*.

This the 7th day of February, 2025.

                                                  Respectfully submitted,

                                                  TRIBAL SOLUTIONS GROUP, LLC;
                                                  TRIBAL COMMUNICATIONS, LLC;
                                                  DAN C. DAVIS; AND TC2, LLC

                                                  By Their Attorneys,

                                                  JONES WALKER LLP

                                                  By: *s/ Adam Stone*
                                                        ADAM STONE

Neville H. Boschert (MS Bar No. 3697)
 nboschert@joneswalker.com
Adam Stone (MS Bar No. 10412)

#103498744v6

astone@joneswalker.com
Kaytie M. Pickett (MS Bar No. 103202)
 kpickett@joneswalker.com
JONES WALKER LLP
3100 North State Street, Suite 300
Jackson, MS 39216
Tel.: (601) 949-4900; Fax: (601) 949-4804

## **CERTIFICATE OF SERVICE**

I, Adam Stone, do hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

This, the 7th day of February, 2025.

 *s/ Adam Stone*
ADAM STONE

#103498744v6